```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BRADLEY TANKIEWICZ,

                        Plaintiff,
                                             MEMORANDUM & ORDER
            -against-                        13-CV-3914(JS)(ARL)

UNITED SERVICE WORKERS UNION LOCAL 74
and PINELAWN CEMETARY,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Edward Lee Sample, II, Esq.
                    500 Bi-county Boulevard, Suite 112n
                    Farmingdale, NY 11735

For Defendants
Local 74:           Andrew GraBois, Esq.
                    Zachary Richard Harkin, Esq.
                    Joy K. Mele, Esq.
                    O'Dwyer & Bernstein LLP
                    52 Duane Street, 5th Floor
                    New York, NY 10007

                    Eve Irene Klein, Esq.
                    Duane Morris LLP
                    1540 Broadway
                    New York, NY 10036-4089

Pinelawn:           Eve Irene Klein, Esq.
                    Eric William Ruden, Esq.
                    Duane Morris LLP
                    1540 Broadway
                    New York, NY 10036-4089
```

SEYBERT, District Judge:

Plaintiff Bradley Tankiewicz ("Plaintiff") commenced this action against his former employer, defendant Pinelawn Cemetery ("Pinelawn"), and his union, defendant United Service Workers Union Local 74 ("Local 74," and together with Pinelawn,

"Defendants"), alleging that Pinelawn breached its collective bargaining agreement with the Union (the "CBA") by terminating his employment without just cause in violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 et seq., and that Local 74 breached its duty of fair representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq. Plaintiff also asserts claims of disability discrimination and failure to accommodate under the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq. Currently pending before the Court are Defendants' motions to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entries 13, 15.) For the following reasons, Defendants' motions are GRANTED.

BACKGROUND[1]

In May 2005, Plaintiff began working for Pinelawn as a "Driver/Maintenance Worker." (Compl. ¶ 20.) Plaintiff's responsibilities included "servicing funerals, carrying caskets to graves, putting greens on graves, mowing the grass, restoring graves, gardening, setting bronzes and general lawn maintenance." (Compl. ¶ 29.)

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

On or about July 9, 2010, Pinelawn "assigned Plaintiff to disinter a body." (Compl. ¶ 31.) While lifting the casket, Plaintiff tore his rotator cuff and suffered an inguinal hernia. (Compl. ¶ 31.) Plaintiff immediately filed for worker's compensation benefits and was out of work for the next eleven months. (Compl. ¶ 34.) On September 9, 2013 and December 9, 2013, Plaintiff had surgeries to repair his injuries. (Compl. ¶¶ 35-36.) Plaintiff claims that he "continues to suffer extreme pain, especially when coughing, bending over or lifting heavy objects" and "also suffers from continual swelling and pain in his testicles," notwithstanding the corrective surgeries. (Compl. ¶ 37.)

In the Spring of 2011, Plaintiff asked Pinelawn if he could return to work. (Compl. ¶ 38.) However, Pinelawn would not allow Plaintiff to return until "he could demonstrate that he was 100% healed or had no restrictions on his return to work." (Compl. ¶ 39 (internal quotation marks omitted).) On June 9, 2011, Plaintiff returned to work after obtaining a doctor's note, which, according to the Complaint, "indicat[ed] there were no restrictions on his return to work." (Compl. ¶¶ 40-41.)

Plaintiff claims that after he returned to work, Pinelawn "began a campaign of harassment and intimidation against [him] on the basis of his physical disabilities and in retaliation for taking extended leave." (Compl. ¶ 42.) Plaintiff specifically

3

alleges that "[o]n his first day back to work, despite having never used a tamping machine before, . . . Pinelawn assigned Plaintiff the physically arduous task of tamping graves." (Compl. ¶ 43.) Plaintiff alleges that he complained to Pinelawn that this task "compromised and aggravated [his] disabilities" and he "asked to be reassigned to a lighter work assignment consistent with his physical limitations." (Compl. ¶ 44.) However, Pinelawn "ignored Plaintiff's complaints and refused to re-assign" him. (Compl. ¶ 45.) Additionally, Pinelawn "began to excessively scrutinize Plaintiff's work performance." (Compl. ¶ 46.) According to the Complaint, over the next year, Pinelawn issued more than sixty written performance write-ups "for trivial or non-existent infractions." (Compl. ¶ 46.)

In September 2012, Plaintiff began to experience "severe pain in his lower back," which his chiropractor determined "was directly attributable" to Plaintiff's tamping work. (Compl. ¶¶ 47, 49.) Plaintiff provided Pinelawn with notes from his chiropractor "outlining Plaintiff's therapy and treatment program" and again asked to be reassigned from tamping, but Pinelawn again refused to reassign him. (Compl. ¶¶ 50-51.)

In late November 2012, representatives from a private investigation firm retained by Pinelawn interviewed Plaintiff regarding an incident of arson to one of Pinelawn's bulldozers. (Compl. ¶¶ 52-55.) Plaintiff denied any knowledge or involvement

4

in the arson but the representatives told Plaintiff that they "had reason to be believe that he was involved." (Compl. ¶ 55.) By letter dated December 2012, Pinelawn advised Plaintiff that it had "identified the person responsible for the arson." (Compl. ¶ 56.) Sometime also in December 2012, Pinelawn suspended Plaintiff for three days "for being in a dump area to dump top soil five minutes early." (Compl. ¶ 57.) Plaintiff immediately filed a grievance regarding the suspension with Local 74 but the Complaint does not explain how the suspension was unlawful or how it violated the CBA. (Compl. ¶ 58.) Additionally, in January 2013, Plaintiff discovered that Pinelawn gave Christmas bonuses to all of its employees except him. (Compl. ¶¶ 59-60.)

On March 21 and 22, 2013, after waking up with "intense lower back pain," Plaintiff called Pinelawn "to report that he was ill and unable to work." (Compl. ¶¶ 61-62.) Plaintiff later faxed Pinelawn a note from his chiropractor stating that he was "under doctor's care until Monday, March 25, 2013." (Compl. ¶¶ 63-64.) That afternoon, Plaintiff's supervisor, George Molna, called plaintiff and told him that "it was 'mandatory' that he come to work the next day." (Compl. ¶ 65.) The next morning, Pinelawn's owner, Justin Locke, left a message on Plaintiff's cellphone stating: "You have been terminated as of today. We believe you had prior knowledge of the bulldozer arson." (Compl. ¶ 66.)

However, Plaintiff claims that Pinelawn terminated him because of alleged disability or perceived disability and that Pinelawn therefore breached the CBA by terminating his employment without just cause. (Compl. ¶¶ 67-69, 86.) In April 2013, Plaintiff filed a formal grievance regarding his termination with Local 74. (Compl. ¶ 72.) On April 23, 2013, Local 74 held a grievance meeting regarding Plaintiff's December 2012 suspension, and Plaintiff's suspension was upheld. (Compl. ¶¶ 73-74.) After the meeting, Plaintiff asked about the status of his grievance regarding his termination, and the Shop Steward, Mike Herron, told Plaintiff, "I'll get back to you." (Compl. ¶ 75.) According to Plaintiff, to date, Local 74 "has failed to pursue a grievance on behalf of Plaintiff regarding his discharge." (Compl. ¶ 76.) The Complaint further alleges that Plaintiff's grievance was meritorious and that Local 74 breached its duty of fair representation "by failing to press [the grievance] in a reasonable and adequate manner." (Compl. ¶ 79.)

Pinelawn and Local 74 have separately moved to dismiss the Complaint but assert nearly identical arguments in support. (Docket Entries 13, 15.) These motions are currently pending before the Court.

## DISCUSSION

The Court will first set forth the applicable legal standard before turning to Defendants' motions more specifically.

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71–72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

II. <u>Hybrid Section 301/Duty of Fair Representation Claim</u>

As noted, Plaintiff claims that Pinelawn breached the CBA when it terminated his employment without just cause and that Local 74's failure to "process" Plaintiff's grievance regarding his termination constitutes a breach of its duty of fair representation. Although Plaintiff's claims against Pinelawn and

7

Local 74 are distinct causes of action,[2] "courts have combined them to create one claim known as the hybrid § 301/duty of fair representation claim." Chiari v. N.Y. Racing Ass'n Inc., 972 F. Supp. 2d 346, 367 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). Under a hybrid Section 301/DFR claim, "[t]he plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." White, 237 F.3d at 178-79; accord Thomas v. Little Flower for Rehab. & Nursing, 793 F. Supp. 2d 544, 547 (E.D.N.Y. 2011) ("To prevail on a hybrid § 301/duty of fair representation claim, the Plaintiff must establish both that: (1) [the employer] breached the CBA and (2) [the union] breached the duty of fair representation." (citations omitted)). Accordingly, "'a breach of the union's duty of fair representation is essential to both of [Plaintiff's] claims.'" Chiari, 972 F. Supp. 2d at 367 (alteration in original) (quoting Stephens v. Maxx Props., No. 11-CV-2575, 2012 WL 1949339, at *2 (E.D.N.Y. May 29, 2012)).

Defendants first argue that Plaintiff has failed to sufficiently allege that Local 74 breached its duty of fair representation. (Local 74's Br., Docket Entry 16, at 5-10;

---

[2] "Section 301 of the LMRA governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied from § 9(a) of the [NLRA], 29 U.S.C. § 159(a)." White v. White Rose Food, 237 F.3d 174, 179 n.3 (2d Cir. 2001).

Pinelawn's Br., Docket Entry 14, at 4-6.)  The Court agrees for the reasons explained below.

"To state a claim for a violation of the duty of fair representation, the plaintiff must allege that (1) the union's 'actions or inactions are either arbitrary, discriminatory, or in bad faith' and (2) 'a causal connection between the union's wrongful conduct and their injuries.'"  Jiggetts v. Local 32BJ, SEIU, No. 10-CV-9082, 2011 WL 4056312, at *5 (S.D.N.Y. Aug. 10, 2011) (quoting Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010), adopted by 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011).

In situations like this, where an "employee claims that his union breached its duty of fair representation by failing to grieve his complaints, courts typically look to determine whether the union's conduct was arbitrary."  Moore v. Roadway Express, Inc., No. 07-CV-0977, 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008) (citing Clarke v. Commc'n Workers of Am., 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases)).  A union acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim," Samuels v. Air Transport Local 504, 992 F.2d 12, 16 (2d Cir. 1993), but not where it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance," Cruz v. Local Union No. 3 of the Int'l Bd. of Elec.

Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994). "Before deciding that a grievance lacks merit, however, the union must 'conduct at least a minimal investigation . . . .'" Llanos v. Brookdale Univ. Hosp. & Med. Ctr., No. 10-CV-1726, 2011 WL 809615, at *3 (E.D.N.Y. Mar. 2, 2011) (quoting Clergeau v. Local 1181, Amalgamated Transit Union, AFL-CIO, No. 06-CV-5567, 2008 WL 3334035, at *3 (E.D.N.Y. Aug. 10, 2008)). However, "only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate," and "tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." Thomas, 793 F. Supp. 2d at 548 (internal quotation marks and citation omitted) (brackets omitted). Thus, to state a claim of a breach of the duty of fair representation, Plaintiff must "plausibly allege[ ] that: (1) [he] had a meritorious grievance; (2) [Local 74] was aware of the grievance; and (3) [Local 74] acted arbitrarily in failing to process the Plaintiff's grievance." Id. (citing Young v. U.S. Postal Serv., 907 F.2d 305, 308 (2d Cir. 1990)).

Here, although Plaintiff has adequately alleged a meritorious grievance, Plaintiff fails to allege any facts that plausibly suggest that Local 74 acted arbitrarily in the handling of his grievance. Plaintiff simply alleges that in April 2013, he filed a grievance regarding his discharge and that Local 74 "failed to pursue a grievance," "acted arbitrarily in failing to process

10

the grievance," and "fail[ed] to press Plaintiff's meritorious claims in a reasonable and adequate manner." (Compl. ¶¶ 76-79.) These allegations are merely legal conclusions and are devoid of any facts that indicate in what way Local 74 breached its duty of fair representation. "Even where a plaintiff alleges 'arbitrary and bad faith conduct' on the part of the union, conclusory allegations are insufficient to defeat a motion to dismiss." Semper v. N.Y. Methodist Hosp., No. 09-CV-5524, 2010 U.S. Dist. LEXIS 142398, at *40 (E.D.N.Y. Mar. 30, 2010) (finding that complaint failed to adequately allege a breach of the duty of fair representation because the plaintiff "fail[ed] to make any claim regarding the manner in which or reasons behind the Union's failure to process her grievance"); see also Llanos, 2011 WL 809615, at *3 (granting motion to dismiss hybrid Section 301/DFR claim where the plaintiff did "not allege[ ] any facts to support his conclusory allegations" that "the Union engaged in arbitrary and bad faith conduct and that, in failing and refusing to arbitrate, the Union violated plaintiff's rights" (internal quotation marks and citation omitted) (brackets omitted)); Chaney v. Greyhound Lines, Inc., No. 09-CV-7593, 2010 WL 2541369, at *4 (S.D.N.Y. June 23, 2010) (granting motion to dismiss hybrid Section 301/DFR claim because the plaintiff failed to "allege any facts that suggest[ed that] the Union failed to adequately represent her" and only "paraphrase[d] the [DFR] prong of a hybrid claim"). Thus,

11

Plaintiff has failed to plausibly allege that Local 74 breached its duty of fair representation.

Recognizing this pleading deficiency, Plaintiff attempts to cure such deficiency by alleging in his opposition brief that Local 74 failed to investigate Plaintiff's grievance. (Pl.'s Opp. Br., Docket Entry 20, at 8-9.) However, "[a] complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss." Caple v. Parman Mortg. Assocs. L.P., No. 11-CV-3268, 2012 WL 4511445, at *4 (E.D.N.Y. Oct. 1, 2012) (ellipsis in original) (quoting Brownstone Inv. Grp., LLC v. Levey, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007)). The Complaint does not allege that Local 74 failed to investigate Plaintiff's grievance, and Plaintiff cannot modify the allegations of the Complaint via his opposition papers.

Moreover, Plaintiff's failure to adequately plead a claim of a breach of the duty of fair representation against Local 74 also defeats his claim that Pinelawn breached the CBA. See Llanos, 2011 WL 809615, at *4 ("Plaintiff's failure to properly plead a claim for breach of the duty of fair representation against the Union defeats his claim against [the employer]."); Henry v. United Parcel Serv., Inc., 602 F. Supp. 2d 419, 424 (E.D.N.Y. 2009) ("Because [plaintiff] fails to allege conduct that would establish that the Union's actions were arbitrary, discriminatory or in bad faith or that the Union seriously undermined the arbitral process,

his complaint fails to assert a breach of the Union's DFR."), aff'd 379 F. App'x 11 (2d Cir. 2010). Accordingly, Defendants' motions to dismiss are GRANTED and Plaintiff's hybrid Section 301/DFR claim is DISMISSED.

III. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir.1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Here, Plaintiff may be able to allege a plausible claim that Local 74 breached its duty of fair representation by providing factual detail regarding the circumstances of Local 74's handling of his grievance. Accordingly, the Court will grant Plaintiff one opportunity to cure the deficiencies of the Complaint.

IV. NYSHRL Claims

Pinelawn also requests that the Court decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims "in the event that the Court dismisses Plaintiff's federal law

13

claims" pursuant to 28 U.S.C. § 1367(c)(3). (Pinelawn's Br. at 7-8.)  As a general rule, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).  Thus, if Plaintiff fails to successfully replead his federal claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims and dismiss them without prejudice to refiling in state court.  See King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4327396, at *1 (S.D.N.Y. Sept. 18, 2012) ("[U]nless Plaintiff successfully repleads one or more federal claims, this Court DECLINES to exercise supplemental jurisdiction over any of Plaintiff's state or city law claims under the NYSHRL or NYCHRL.").

[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint (Docket Entries 13, 15) are GRANTED. Plaintiff's hybrid Section 301/duty of fair representation claim is DISMISSED WITHOUT PREJUDICE and with leave to replead. If Plaintiff wishes to replead, he must filed an amended complaint within thirty (30) days of this Memorandum and Order. If he fails to do so, his hybrid Section 301/duty of fair representation claim will be dismissed with prejudice and his state law claim will be dismissed without prejudice to refiling in state court.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: September __26__, 2014
       Central Islip, NY